# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TAVON P. SINGLETARY,　　　　　　　　＊

Plaintiff　　　　　　　　　　　　　　＊

v　　　　　　　　　　　　　　　　　　＊　　　Civil Action No. PWG-16-3712

BRIAN G. IAMES, *et al.*,　　　　　　＊

Defendants　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　　　＊＊＊

## **MEMORANDUM OPINION**

This case arises out of an altercation at North Branch Correctional Institution ("NBCI"), between Plaintiff Tavon Singletary, an inmate, and two of the institution's correctional officers. Compl. 3, ECF No. 1. Plaintiff alleges that he was verbally harassed by Correctional Officer Saville and pepper sprayed by Sergeant Iames because he was holding open the food service pass slot in his cell door. *Id.* at 4. After being pepper sprayed, Plaintiff was taken to see medical personnel, where he alleges that he received inadequate medical treatment. *Id.* Plaintiff initiated this litigation pursuant to 42 U.S.C. § 1983 for alleged Eighth Amendment violations. Defendants have filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment. Defs.' Mot., ECF No. 22. Plaintiff has responded, ECF Nos. 27, 33, 34, and Defendants did not file a reply. Upon review of the papers and exhibits filed, I have determined that a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2014). Having construed Defendants' motion as a Motion for Summary Judgement and finding that no genuine dispute of material fact exist regarding Plaintiff's claims, I will grant Defendants' Motion for Summary Judgment and the Clerk shall close the case.[1]

---

[1] Plaintiff has also filed a Motion to Appoint Counsel (ECF No. 28) which is denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and

**Background**

On January 22, 2015, Plaintiff held open the food service slot to his cell door with his arm. Compl. 3; Verified R. 4, 6, 11, 24, 30, ECF No. 22-2. Sergeant Iames and Correctional Officer Saville witnessed Plaintiff holding the food service slot open and his cellmate, Ronnie Wimbush, tampering with the cell's fire suppression sprinkler system. *Id.* at 4, 6, 11. Plaintiff alleges that Correctional Officer Saville stood by his cell door slot "licking his lips towards Plaintiff and then stated 'you black ass nigga if the cell door was open ill f****ken kill you b***h ass black nigga.'" Pl.'s Mem. 3, ECF No. 27-1; *See also* Verified R. at 23–24. Sergeant Iames issued a warning to Wimbush to stop tampering with the fire suppression system and for Plaintiff to close the cell door slot. 24, 30. According to Wimbush, Sergeant Iames "told my cellmate he has 3 seconds to close the slot." Verified R. at 30. Plaintiff did not comply and Sergeant Iames sprayed Plaintiff and Wimbush with mace. *See Id.* at 11, 30; Pl.'s Mem. 3. Although Plaintiff alleges that Sergeant Iames sprayed him without warning and without following prison procedures, Compl. 4, he acknowledged in a filing associated with a Request for Administrative Remedy ("ARP") that he filed with respect to the incident, that

> to avoid any further problems I said sir but Mr. B. Iames cut me off and said why all you niggas like to hold slots he had a vindictive look of revenge then said how about this ill [sic] give you three second to close the slot then pulled [out] his pepper spray then sprayed me and my cellbuddy. . . .

Verified R. 24. Plaintiff attempted to block the pepper spray with his hands. *Id.* at 4. Both Plaintiff and Wimbush were handcuffed, and taken to the prison's medical facilities. There,

---

an indigent claimant must present "exceptional circumstances" for the court to appoint counsel. *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Plaintiff's claim is not unduly complicated and he has demonstrated the ability to articulate his claims.

Plaintiff was seen by Nurse Krista Bilak.[2] Plaintiff alleges that despite the fact that he was wheezing, Nurse Bilak failed to check his respiration or blood pressure, and did not provide him with any assistance. Compl. 4. However, Bilak noted in a medical record that Plaintiff suffered from asthma, his blood pressure was 148/88, pulse 106, respiration 18, and pulse oxygen level was 99. Verified R. 6, 8. Further, she recorded that his respiration was normal and his lungs clear. *Id*. Plaintiff also was allowed to take a decontamination shower. *Id.* at 3, 11.

Plaintiff was administratively charged with violating inmate rules 116 ("possess, misuse, tamper with, damage, or destroy security equipment or property, detection equipment, or fire suppression equipment or alarm"), and 400 ("disobey an order"). *Id.* at 11. At the hearing on the rule violations, Plaintiff testified that he was not given a direct order, rather his cellmate was given the direct order. *Id.* at 15. Plaintiff questioned his cellmate, Wimbush, regarding what he was doing "*at the time the slot was being held*. . . ." (emphasis added, demonstrating that the slot in fact was being held open) and Wimbush denied attempting to disable the fire sprinkler. *Id.* at 16. In response to Plaintiff asking Wimbush whether Sergeant Iames gave an order to close the food service slot, he responded "Iames said if you don't close [the] slot in 3 second I am going to mace . . . ." *Id.* The Hearing Officer at the infraction hearing also "reviewed the video camera footage as requested by Singletary." *Id.* at 17.[3] The Hearing Officer found that

> Singletary did have his arm out of the pass through slot on the cell, which prompted Sgt. Iames to report to the cell. The video camera showed the incident clearly, as well as the documentation in the notice. Singletary's presentation even

---

[2] Bilak, also known as (and alternatively described in this opinion as) Krista Swan, has not been properly served with the complaint. Regardless, for the reasons that follow, Plaintiff's Complaint against Bilak also shall be dismissed.

[3] Defendants have filed an affidavit stating that Plaintiff was shown the video by an Inmate Grievance Office Coordinator. ECF No. 30. Curiously, the video has not been provided to the Court.

3

acknowledged that the slot was being breeched, as he asked Wimbush what Wimbush was doing while the slot was being held.

*Id.* At the conclusion of the hearing, the Hearing Officer found him Plaintiff guilty of violating Rule 116 but not guilty of violating rule 400. *Id.* at 16–17

Plaintiff then filed an ARP regarding the incident. He claimed that he was harassed by Correctional Officer Saville and that he was sprayed with pepper spray in violation of his constitutional rights under the Eighth Amendment. Verified R. 24–25. On February 9, 2015, the ARP was dismissed for lack of evidence and a finding that the use of force complied with Department of Public Safety and Correctional Services' policies and use of force manual. *Id.* at 27. Plaintiff's appeal to the Commissioner of Correction was dismissed as unsubstantiated. *Id.* at 32. Plaintiff's appeal to the Inmate Grievance Office was dismissed upon a finding that Plaintiff had been found guilty of inmate rule violations arising from the incident and that he was prevented under principles of *res administrata* and collateral estoppel from challenging through the grievance process the disciplinary finding of guilt. *Id.* at 38.

Plaintiff then filed this lawsuit seeking redress pursuant to 42 U.S.C. § 1983. Defendants filed a Motion to Dismiss, or in the alternative, for Summary Judgment. ECF No. 22. Plaintiff responded to the Motion with various filings, *see* ECF Nos. 27, 33, 34, and Defendants did not file a reply. Because I find there are no genuine disputes of material fact, I will grant Defendants Motion for Summary Judgment with regards to all counts as Plaintiff has failed to demonstrate a violation.[4]

---

[4] Because the defendant's filed a motion to dismiss or in the alternative for summary judgment, Plaintiff was on notice that the court could treat the motion as one for summary judgment and rule on that basis. "[T]he Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue,* DKC–10–3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.,* No. CCB–12–3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v.*

**Standard of Review**

**A.     Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.     Motion for Summary Judgment**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

---

*Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998). Here, the title of the motion itself, "Motion to Dismiss or in the Alternative Motion for Summary Judgment," makes it obvious that the Court might construe it as seeking summary judgment, and thereby provides sufficient notice to Plaintiff. *See Ridgell,* 2012 WL 707008, at *7; *see Laughlin,* 149 F.2d at 260–61.

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. There is no genuine dispute of material fact if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar facts "presented in a form that would be admissible in evidence" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(2).

## Analysis

### A. Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). This court must look at "the need for application of force"; "the relationship between that need and the amount of force that was used"; "the extent of the injury inflicted"; "the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials"; and "any efforts made to temper the severity of the response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The extent of the injury incurred is one factor indicating whether the force used was necessary in a particular situation, but if force was applied maliciously and sadistically, liability is not avoided simply because the prisoner had the "good fortune to escape without serious injury." *Id.* at 36–38.

"It is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for

7

the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). However the use of pepper spray is not "per se a cruel and unusual punishment," *McCargo v. Mister*, 462 F. Supp. 813, 818 (D. Md. 1978), and it may be used in order "to control recalcitrant inmates." *Williams*, 77 F.3d at 763 (quoting *Landman v. Peyton*, 370 F.2d 135, 138 & n.2 (4th Cir. 1966)). Determining whether the amount of chemical agent used was appropriate, as with all other excessive force claims, focuses on whether the Defendant acted with a sufficiently culpable state of mind: "wantonness in the infliction of pain." *Iko*, 535 at 239–40 (citations omitted) (holding a correctional officer was not entitled to qualified immunity where an additional chemical agent was deployed into the inmate's cell after the inmate attempted to comply with officer's order, did not react violently, and the officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).

An officer may be liable for Eighth Amendment violations when he or she deploys more than a reasonable amount of a chemical agent. *See, e.g., Furnace v. Sullivan,* 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox,* 297 F.3d 727, 732 (8th Cir. 2002) (finding a violation where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (finding a violation where officer indiscriminately sprayed entire prison tier). However, when an inmate ignores official commands repeatedly, multiple applications of pepper spray have been found reasonable. *See Williams,* 77 F.3d at 759, 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan,* 19 F. App'x. 97, 99, 102–03 (4th Cir. 2001) (upholding use of pepper spray

twelve times when inmate refused to comply with commands to move from his cell and did not demonstrate "more than de minimis injury"); *Norris v. Detrick,* 918 F. Supp. 977, 984 (N.D. W.Va. 1996) (upholding use of two blasts of mace when inmate refused to return to his cell during lockdown). Use of chemical agents is reasonable when, as here, an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls,* 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson,* 315 F.3d 548, 557 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

In Plaintiff's Complaint, as well as in his ARP, he states that Defendants responded to his cell due to his holding the food service door slot open. The evidence is undisputed that Defendants' directed Plaintiff to close the slot, but he refused. Verified R. 24; Def.'s Mem. 8. Faced with this disobedience of an order, Sergeant Iames sprayed a burst of pepper spray hitting both inmates. Thereafter, Plaintiff and his cellmate immediately complied with Defendants' orders and submitted to being handcuffed. Plaintiff was escorted to the medical department where he was assessed, his vital sign taken, and he was provided a decontamination shower.

It is clear that some force was necessary in order to secure Plaintiff's cell door, as well as to stop the destruction of the fire suppression sprinkler. Wimbush was given a direct order to stop his destruction of the sprinkler[5] and Plaintiff was issued at least one three-second warning to close the food service slot to his cell door.[6]

---

[5] Plaintiff and Wimbush have both denied that Wimbush was destroying the sprinkler. *See e.g.*, Pl.'s Opp'n 3, ECF 27-1; Defs.' Mem. 16, ECF 22-2; Pl.'s 2d Opp'n 4, ECF 33. Even if Wimbush was not destroying property, it is undisputed that Plaintiff held the food service slot open and refused to close it. Although Plaintiff's Complaint alleges he was not warned, his prior filings in the administrative proceedings and Defendants' Memorandum and attached exhibits demonstrate Plaintiff was indeed given a warning before Sergeant Iames deployed pepper spray. *See* Verified R. 24. Based on this record, no reasonable jury could find that Plaintiff and his

Taking the facts in the light most favorable to Plaintiff his claim nevertheless fails as the disputes of fact he raises are not material to the determination of his claims. He admits that he refused to close his door slot, and the evidence is clear that he was warned that if he did not do so, he would be sprayed with pepper spray. Faced with Plaintiff's refusal to close the food service slot, Sergeant Iames sprayed pepper spray to make Plaintiff comply with his order and secure Plaintiff's cell. There is no evidence that the duration of the administration of pepper spray or the amount used was excessive, or contrary to Department of Corrections policies. Plaintiff's injuries were consistent with the use of an appropriate amount of pepper spray. The evidence demonstrates that only the amount of force necessary to protect correctional staff and restore order was used as Sergeant Iames discontinued spraying pepper spray once Plaintiff and Wimbush complied. Plaintiff's opinion that a lesser amount of force could have been used does not create a genuine dispute of material fact because it constitutes inadmissible opinion testimony. Fed. R. Evid. 701. As the Fourth Circuit explained in *Williams,* "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate. Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain." *Williams,* 77 F.3d at 763 (quoting *Soto,* 744 F.2d at 1262). Here, once Plaintiff complied, he was immediately removed from his cell, and was provided medical attention to include a decontamination shower. Prompt washing and medical attention have been considered a sufficient step to mitigate the use of chemical agents. *See Williams*, 77 F.3d at 763. It is clear

---

cellmate were not warned prior to the administration of pepper spray.

[6] Plaintiff's administrative pleading also indicates that prior to Sergeant Iames's warning of three seconds, Correctional Officer Saville "ask[ed Plaintiff] do I want to close the slot" before walking away. Verified R. 24. Although the language does not indicate it was necessarily a warning, it demonstrates that Correctional Officer Saville and then Sergeant Iames indicated they wished for the slot to be closed. It is possible, that more than one warning was issued based on Plaintiff's own language.

that Sergeant Iames's use of pepper spray was not excessive in relation to the need to restore order and protect the inmates and staff when Plaintiff continued to hold the food service slot open after being ordered to close it. The record "falls far short" of showing there was "no plausible basis for [Iames's] belief that this degree of force was necessary." *Whitley,* 475 U.S. at 323.

To the extent Plaintiff complains that Sergeant Iames failed to follow established DPSCS policies and procedures regarding the amount of pepper spray to be used, his claim fails. In his Complaint and Opposition to the Motion, Plaintiff cites Division of Correction Directive ("DCD") 110-23 for the proposition that Sergeant Iames violated the Directive when he sprayed Plaintiff instead of having placed a plastic security shield in front of Plaintiff's cell. Compl. 4; Pl.'s Mem. 4. This merely demonstrates in conclusory fashion that an alternative existed but not that the use of pepper spray was forbidden in such circumstances. To the contrary, the provision Plaintiff cites, DCD 110-23—but has not provided into evidence—has been found to allow the use of pepper spray. *See Iko*, 535 F.3d at 239 ("there is no question that some dispersal of pepper spray was warranted in carrying out the cell extraction. The Maryland Division of Corrections Directive governing the use of force, DCD 110–23 (the 'Use of Force Directive'), permits the use of pepper spray in a cell extraction 'to incapacitate the inmate prior to committing staff' to the procedure.").

However, even if there had been a failure to comply with the letter of the policy governing use of pepper spray, failure to precisely follow procedural guidelines alone does not give rise to a liberty interest. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) ("The adoption of mere procedural guidelines, however, does not give rise to a liberty interest protected under the fourteenth amendment. Rather, the state must use 'language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed and that [the

challenged action of prison authorities] will not occur absent specified substantive predicates . . . .'" (quoting *Hewitt v. Helms,* 459 U.S. 460 471–72 (1983))); *see also Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that failure to follow a "prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."). Thus, the failure to follow regulations does not, in and of itself, result in a violation of due process.

### B. Verbal Harassment

Plaintiff's allegation that Officer Saville harassed him is unavailing. During the investigation of Plaintiff's claims, Officer Saville denied harassing Plaintiff. No evidence substantiating Plaintiff's claims of harassment was uncovered. But even if Saville acted in the manner alleged, verbal abuse of inmates by guards, without more, states no claim. *Robinson v. Davis*, No. DKC-11-556, 2011 WL 6330142, at *4 (D. Md. Dec. 16, 2011) ("Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim"); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990) ("The subjection of a prisoner to verbal abuse or profanity does not arise to the level of a constitutional deprivation"); *see also Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979).

### C. Medical Claim

Even if Plaintiff had properly served Krista Bilak, she would be entitled to summary judgment. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth

Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively viewed, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F.3d at 390 (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (holding that the focus must be on

precautions actually taken in light of the known medical risk and not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Further the mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Williams v. Corizon Med. Serv.*, DKC-12-2121, 2013 WL 4541684, at *7 (D. Md. Aug. 26, 2013) ("Disagreement with a medical provider does not amount to a violation of constitutional magnitude. An inmate's difference of opinion over matters of expert medical judgment or a course of medical treatment does not rise to the level of a constitutional violation.").

In one of his filings in opposition to the Defendants' motion, Plaintiff states that as a result of the pepper spray he "suffered watering eyes, breathless, hot body symptoms, pain, weakness, dizziness and agony." Pl.'s 2d Opp'n 1, ECF No. 33. But the medical records attached as exhibits to the Defendants' Motion demonstrate that Plaintiff was assessed immediately following the use of pepper spray. Verified R. 6, 8; Pl.'s Opp'n 4–5. And he was provided a decontamination shower immediately following the altercation in order to wash the pepper spray off his body. Verified R. 3, 11. Contrary to his assertion, his vital signs were taken and he appeared in no distress. *Id.* at 8–9. He was then returned to his cell. As previously noted the prompt washing of the chemical agents and medical attention have been considered a sufficient step to mitigate the use of chemical agents. *See Williams,* 77 F.3d at 763. Plaintiff does not allege, much less demonstrate, how he was harmed by the alleged conduct of Nurse Bilak in assessing his needs. Rather, his complaint is nothing more than a disagreement with the course of

treatment provided. Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

**Conclusion**

Defendants' dispositive motion will be granted. A separate Order follows.


February 28, 2018  
Date

/S/  
Paul W. Grimm  
United States District Judge